UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Dahlman Farms, Inc.,

Plaintiff,

v.

Civ. No. 01-986 (JEL/JGL)
ORDER

FMC Corporation,

Defendant.

---

Michael M. Fluegel, Esq., Fluegel, Helseth, McLaughlin, Anderson & Brutlag, appeared for Plaintiff Dahlman Farms, Inc.

Michael E. McWilliams, Esq., Butler, Snow, O'Mara, Stevens & Cannada, PLLC, appeared for Defendant FMC Corporation.

---

This action arises from Dahlman Farms, Inc.'s (Dahlman) use of AIM herbicide (AIM) on its seed corn crop in 1999, which allegedly caused severe damage to the crop and resulted in a loss of yield. Dahlman sued the manufacturer of AIM, FMC Corporation (FMC), asserting several claims under Minnesota state law. The matter comes before the Court on FMC's Motion for Summary Judgment. For the reasons given below, the Court grants FMC's motion.

## I. SUBJECT MATTER JURISDICTION

The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1332(a)(1), 1441(a) (2000).

## II. BACKGROUND

Dahlman is a Minnesota corporation engaged in the business of producing seed corn and seed soybean. In 1999, Craig Dahlman, one of three brothers who owned and worked for Dahlman, decided to purchase AIM from the Howe Company, a local dealer, for use on Dahlman's seed corn crop. AIM was a relatively new product that had been registered for

FILED DEC 0 2 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTERED DEC 0 2 2002
DEPUTY CLERK'S INITIALS

distribution and sale by the EPA in the fall of 1998. Craig Dahlman's decision to purchase AIM was based primarily on statements found on the AIM label, which had been approved by the United States Environmental Protection Agency (EPA). Specifically, the label stated that AIM "is designed to be mixed with water and applied to corn (field, seed, popcorn, and silage) for selective postemergence control of broadleaf weeds." It stated further: "Due to environmental conditions and certain spray tank additives, some herbicidal symptoms may appear on the crop. However, the crop recovers quickly with no loss in yield." In addition to reviewing the product label, Craig Dahlman spoke with a salesperson from the Howe Company and Dahlman's crop consultant, both of whom told him that AIM was safe for use on seed corn.

Dahlman applied AIM to its seed corn crop according to the instructions on the label in June 1999. Within days, portions of the crop were affected by a condition known as "leaf wrap" or "buggy whipping." This condition severely damages or kills leaves wrapped around the outside of a plant, thereby preventing the plant from fully emerging. Dahlman reported the problem to FMC. FMC responded by sending an area sales representative, a district sales manager, and an area technical representative to view Dahlman's fields. FMC offered to hire manual laborers to walk through the fields and tear the tightly wrapped, dessicated leaves off of the plants. Dahlman refused the offer because it was concerned about the delicate condition of the plants. Some of Dahlman's seed corn plants died; others were severely damaged or experienced delayed development.

Dahlman commenced this action against FMC in Minnesota state court in May 2001, and FMC removed it to this Court on the basis of diversity of citizenship between the parties. Dahlman filed a seven-count Amended Complaint in February 2002, stating causes of action under Minnesota law for negligent testing, negligent labeling, strict liability, breach of express

warranty, breach of implied warranty, false advertising in violation of Minn. Stat. § 325F.67 (2000), and consumer fraud in violation of Minn. Stat. § 325F.69 (2000). FMC now moves for summary judgment, arguing that Dahlman's claims are preempted by the Federal Insecticide, Fungicide, and Rodenticide Act, 7 U.S.C. §§ 136-136y (2000) (FIFRA), or, in the alternative, barred by the Minnesota economic loss doctrine, Minn. Stat. § 604.10 (2000). FMC also argues that, to the extent Dahlman's claims are not preempted or barred, a limitation of remedies provision found on the AIM label limits Dahlman's recovery to the amount it paid to purchase the AIM.

## III. DISCUSSION

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, Rule 56(e) requires the nonmoving party to respond by submitting evidentiary materials that designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

FMC argues that Dahlman's claims are preempted by the FIFRA because they are premised on the inadequacy of the EPA-approved AIM label, which stated that AIM could be used on seed corn and that such use would not result in a loss of yield.

The "FIFRA creates a comprehensive scheme for the regulation of pesticide labeling and packaging." *Welchert v. Am. Cyanamid, Inc.*, 59 F.3d 69, 71 (8th Cir. 1995). Under the FIFRA, pesticides distributed or sold in the United States must be registered with the EPA. 7 U.S.C. § 136a(a); *see Netland v. Hess & Clark, Inc.*, 284 F.3d 895, 898 (8th Cir.), *cert. denied*, ___ U.S. ___ (Oct. 15, 2002); *Welchert*, 59 F.3d at 71. The FIFRA's definition of the term "pesticide" includes herbicides such as AIM. *See* 7 U.S.C. § 136(u); *Welchert*, 59 F.3d at 71 n.1. A pesticide manufacturer applying for registration must supply the EPA with a statement containing certain information about the pesticide, including a copy of the pesticide label. 7 U.S.C. § 136a(c)(1)(C); *see Netland*, 284 F.3d at 898; *Welchert*, 59 F.3d at 71. Before registering a pesticide, the EPA must make a determination that the pesticide label complies with the FIFRA. 7 U.S.C. § 136a(c)(5)(B); *see Netland*, 284 F.3d at 898; *Welchert*, 59 F.3d at 71 n.2.

Once a pesticide label is approved and the pesticide is registered, the "FIFRA expressly provides for a defense, arising from preemption, against certain state law claims." *Nat'l Bank of Commerce of El Dorado, Ark. v. Dow Chem. Co.*, 165 F.3d 602, 608 (8th Cir. 1999). The basis of the defense is the FIFRA's express preemption clause, which provides that a state "shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under [the FIFRA]." 7 U.S.C. § 136v(b). The term "requirement" includes obligations that take the form of common law rules. *See Cipollone v. Ligget Group, Inc.*, 505 U.S. 504, 521 (1992); *Nat'l Bank*, 165 F.3d at 607. As explained by the Supreme Court in *Cipollone*: "'[R]egulation can be as effectively exerted through an award of damages as through some form of preventive relief. The obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy.'" 505 U.S. at 521 (citing *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 247 (1959)).

The Eighth Circuit has consistently held that the FIFRA preempts claims for inadequate labeling or failure to warn. *Netland*, 284 F.3d at 898; *Nat'l Bank*, 165 F.3d at 608; *Bice v. Leslie's Poolmart, Inc.*, 39 F.3d 887, 888 (8th Cir. 1994). Moreover:

> It is immaterial whether an inadequate labeling or failure to warn claim is brought under a negligence or products liability theory. If a state law claim is *premised* on inadequate labeling or a failure to warn, the impact of allowing the claim would be to impose an additional requirement for the label or packaging.

*Netland*, 284 F.3d at 898 (quoting *Nat'l Bank*, 165 F.3d at 608). The Eighth Circuit has also held that the FIFRA preempts claims for breach of express warranty, *Netland*, 284 F.3d at 898; *Nat'l Bank*, 165 F.3d at 608; *Welchert*, 59 F.3d at 73, and for breach of implied warranty, *Nat'l Bank*, 165 F.3d at 608.

Dahlman argues that the FIFRA's preemptive scope does not extend to claims based on the inadequacy of statements relating to pesticide efficacy—that is, statements regarding whether the pesticide actually works and whether it will harm the target crop it is supposed to protect—because such statements are not required under the FIFRA. Congress amended the FIFRA in 1978 to permit the EPA to "waive data requirements pertaining to efficacy" and to "register [a] pesticide without determining that the pesticide's composition is such as to warrant proposed claims of efficacy." 7 U.S.C. § 136a(c)(5). The EPA has exercised that authority by issuing a general waiver of the review of labeling claims relating to pesticide efficacy. *See* 40 C.F.R. § 158.640(b)(1) (2001). Dahlman asserts that if claims relating to pesticide efficacy are preempted by the FIFRA, then this area will be left largely, or entirely, unregulated.

Dahlman cites *Cipollone* and the Eighth Circuit's decision in *Welchert* in support of its position that the FIFRA preempts only claims based on label statements required by the EPA. In *Cipollone*, the Supreme Court interpreted the preemption provision in the Public Health Cigarette Smoking Act of 1969 (PHCSA), which provides: "No requirement or prohibition

based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this Act." 15 U.S.C. § 1334(b) (2000). The Court held that the PHCSA does not preempt breach of express warranty claims based on alleged misstatements by manufacturers in cigarette advertisements. A plurality of the Court stated:

> A manufacturer's liability for breach of an express warranty derives from, and is measured by, the terms of that warranty. Accordingly, the "requirement[s]" imposed by an express warranty claim are not "imposed under State law," but rather imposed *by the warrantor*. . . . In short, a common-law remedy for a contractual commitment voluntarily undertaken should not be regarded as a "requirement . . . *imposed under State law*[.]"

*Cipollone,* 505 U.S. at 525-26. In *Welchert*, the Eighth Circuit, relying in part on *Cipollone*, held that the FIFRA preempts breach of express warranty claims to the extent that they challenge "language specifically *required* and approved by the EPA." 59 F.3d at 73 (emphasis added). In contrast, the court stated that claims for breach of an express warranty that is "voluntarily undertaken" are not preempted. *Id.* Dahlman also relies on an amicus curiae brief submitted to the California Supreme Court by the EPA in the case of *Etcheverry v. Tri-Ag Service, Inc.*, 993 P.2d 366 (Cal. 2000), in which the EPA argued that the FIFRA does not preempt claims related to pesticide efficacy,[1] and the recent decision of the Texas Supreme Court in *American Cyanamid Co. v. Geye*, 79 S.W.2d 21 (Tex. 2002),[2] which held that the FIFRA does not preempt

---

[1] The EPA also argued that the FIFRA does not preempt *any* claims for damages or, in the alternative, that it does not preempt claims based on "off-label" statements. The California Supreme Court rejected all of the EPA's arguments. *See Etcheverry*, 993 P.2d at 374-78.

[2] *Geye* was decided after the briefs in this case were submitted but before the hearing on FMC's motion.

common law claims arising from crop damage because the EPA does not regulate pesticide efficacy.

Dahlman's position that claims premised on the inadequacy of voluntary statements related to pesticide efficacy are not preempted is not supported by the language or purpose of the FIFRA's preemption clause. Again, section 136v(b) prohibits states from imposing or continuing in effect "any requirements for labeling or packaging *in addition to or different from* those required under [the FIFRA]." (Emphasis added.) As the italicized language demonstrates, the scope of the provision is *not* limited to state requirements that overlap federal requirements. The Texas Supreme Court in *Geye* adopted a different interpretation of section 136v(b), stating that "Congress has dictated that state actions regarding product labeling are preempted *to the extent that the content of the product label is regulated*." *Geye*, 79 S.W.2d at 22 (emphasis added); *see also id.* at 29 (stating "without EPA regulation, there can be no preemption"); *id.* (stating "the scope of FIFRA's preemption is dependent on what the EPA regulates"). The Court respectfully disagrees with *Geye* on this point. If the federal government's labeling requirements are limited to pesticide characteristics A, B, and C, and a state imposes a labeling requirement related to pesticide characteristic D, the conclusion that the state requirement is both "in addition to" and "different from" the federal requirements seems inescapable. Furthermore, allowing states to impose such requirements could result in 50 different sets of requirements, each one potentially conflicting with some or all of the others, thereby frustrating the FIFRA's objective of establishing a uniform system of pesticide labeling requirements.

Dahlman's reading of section 136v(b) is also not supported by FIFRA preemption decisions from this circuit. With the exception of *Welchert*, the Eighth Circuit has never indicated that FIFRA preemption analysis depends on whether the allegedly inadequate

statement was voluntarily undertaken or required by the EPA. The Eighth Circuit's subsequent decisions in *National Bank* and *Netland* raise serious questions about *Welchert*'s statement that the FIFRA does not preempt breach of express warranty claims based on voluntary statements. In *National Bank*, the plaintiffs brought negligence, products liability, and breach of express warranty claims against the manufacturers and distributors of several registered pesticides, alleging that the pesticides caused multiple birth defects. 165 F.3d at 605. The court held that the breach of express warranty claims were preempted by the FIFRA without finding it necessary to identify the alleged misstatements that served as the basis for the claims or to discuss whether those misstatements were voluntarily undertaken or required by the EPA. *Nat'l Bank*, 165 F.3d at 608. Instead, the court's discussion was limited to the following: "The [plaintiffs] advance several breach of warranty claims, but we have . . . held that common law claims for breach of express warranty are preempted by FIFRA. *See Welchert*, 59 F.3d at 73. Thus, the [plaintiffs'] express warranty claims fall within *Welchert* and are preempted." *Nat'l Bank*, 165 F.3d at 608.

Similarly, in *Netland*, a plaintiff who was allegedly injured by a registered pesticide brought claims against the pesticide manufacturer for strict liability, failure to warn, negligence, and "breach of warranty." 284 F.3d at 897-98. The court held that the breach of warranty claim was preempted, stating without qualification: "Common law claims for breach of express warranty . . . are preempted by FIFRA." *Netland*, 284 F.3d at 898 (citing *Nat'l Bank*, 165 F.3d at 608; *Welchert*, 59 F.3d at 73). As in *National Bank*, the court in *Netland* did not address whether the plaintiff's claim was based on an alleged misstatement voluntarily undertaken or required by the EPA. Following *National Bank* and *Netland*, the Court concludes that breach of express warranty claims are preempted by the FIFRA if based on alleged misstatements made on an

EPA-approved pesticide label, without regard to whether the alleged misstatement is one required by the EPA.[3]

Dahlman contends that *National Bank* and *Netland* can be distinguished from the present case on the ground that they both involved claims arising from personal injury, rather than property damage allegedly resulting from the pesticide's inefficacy. While it is true that both *National Bank* and *Netland* dealt with claims to recover damages for personal injury, nothing in either of the decisions indicates that they should be limited to cases of that type. Moreover, the Eighth Circuit recently rejected an invitation to narrow the scope of its prior FIFRA preemption decisions. The plaintiff in *Netland* asked the court to "revisit [its] prior decisions insofar as they hold that state law claims based on failure to warn are preempted by FIFRA." 284 F.3d at 899. The plaintiff maintained that a review of those decisions was necessary due to the Supreme Court's decision in *Medtronic, Inc. v. Lohr*, 518 U.S. 470 (1996), the amicus curiae brief filed by the EPA in *Etcheverry*, and "two recent state court decisions [from Montana and Oregon] finding failure to warn claims not preempted in light of these recent developments." *Netland*, 284 F.3d at 899. The court declined to conduct such a review, stating: "The law is well established . . . that this court may not overrule one of its prior decisions unless it does so *en banc*. Thus, until modified or overruled by the court *en banc*, *National Bank* is the law of this circuit."[4] *Netland*, 284 F.3d at 899 (internal citations omitted).

---

3 The First and Ninth Circuits have also held that the FIFRA preempts breach of express warranty claims that are based on alleged misstatements on an EPA-approved pesticide label. *See Grenier v. Vt. Log Bldgs., Inc.*, 96 F.3d 559, 564 (1st Cir. 1996); *Taylor AG Indus. v. Pure-Gro*, 54 F.3d 555, 562-63 (9th Cir. 1995). Like the Eighth Circuit in *National Bank* and *Netland*, those circuits did not limit their holdings to claims based on statements required by the EPA.

4 The Eighth Circuit denied the plaintiff's motions for a rehearing and a rehearing *en banc*.

In short, Dahlman's argument that the FIFRA does not preempt claims related to pesticide efficacy is not supported by the Eighth Circuit's decisions interpreting section 136v(b) or by section 136v(b) itself. Based on these considerations, the Court concludes that the FIFRA's preemption clause extends to claims for damages premised on the inadequacy of statements related to pesticide efficacy.

The Court turns now to an application of section 136v(b) to the claims asserted by Dahlman in this case. Count I of Dahlman's Amended Complaint states a claim for negligent testing, alleging that AIM should not be labeled for use on seed corn because FMC failed to adequately test it on seed corn. (Am. Compl. ¶¶ 16-17.) In essence, this claim is an attack on the statement on the AIM label indicating that AIM is designed to be applied to seed corn. Thus, although couched in terms of negligent testing, Dahlman's first claim is premised on inadequate labeling, and it is therefore preempted by the FIFRA. *See Netland*, 284 F.3d at 898; *Nat'l Bank*, 165 F.3d at 608.

Count II states a claim for negligent labeling, alleging that FMC "breached its duty to accurately and clearly label AIM herbicide." (Am. Compl. ¶ 20.) This claim falls squarely within the rule that claims for "inadequate labeling or failure to warn" are preempted by the FIFRA. *See Netland*, 284 F.3d at 898; *Nat'l Bank*, 165 F.3d at 608; *Bice*, 39 F.3d at 888.

In Count III, Dahlman alleges that FMC "is strictly liable in tort for marketing, labeling, and selling a product, AIM herbicide, which was defective due to [its] failure to adequately instruct the consumer regarding its use, and failure to warn of the foreseeable damages of its use when used according to the instructions." (Am. Compl. ¶ 22.) The FIFRA does not preempt claims against manufacturers of registered pesticides that arise from defects in the manufacture or design of the pesticide. *Netland*, 284 F.3d at 900 (stating "defectively manufactured or

designed products properly labeled under FIFRA remain subject to state regulation, in the form of common law or other claims"); *Nat'l Bank*, 165 F.3d at 609 (same). Dahlman's strict liability claim, however, is not premised on a defect related to the *manufacture* or *design* of AIM. Instead, the claim is that the AIM *label* was defective because it provided inadequate instructions and warnings. Because the claim is an attack on the AIM label, it is preempted by the FIFRA. *See Netland*, 284 F.3d at 898; *Nat'l Bank*, 165 F.3d at 608.

Count IV states claims for breach of express warranty based on two representations appearing on the AIM label: first, that the "crop recovers quickly [from herbicidal symptoms] with no loss in yield" (Am. Compl. ¶ 24); second, that AIM can be used on seed corn (*id.* ¶ 25). Claims for breach of express warranty that are based on a representation made on an EPA-approved pesticide label are preempted by the FIFRA. *See Netland*, 284 F.3d at 898; *Nat'l Bank*, 165 F.3d at 608.

Count V is a claim for breach of the implied warranties of merchantability and fitness for a particular purpose. (Am. Compl. ¶ 26.) The Eighth Circuit held in *National Bank* that the FIFRA preempts implied warranty claims, stating that "[a]llowing . . . implied warranty claims to survive FIFRA preemption would result in additional or different requirements for the pesticide label or package." 165 F.3d at 608; *see also Andrus v. AgrEvo USA Co.*, 178 F.3d 395, 399-400 (5th Cir. 1999) (holding FIFRA preempts claim for breach of implied warranty of fitness for particular purpose); *Taylor*, 54 F.3d at 563 (breach of implied warranties of merchantability and fitness for particular purpose); *Lowe v. Sporicidin Int'l*, 47 F.3d 124, 129 n.4 (4th Cir. 1995) (breach of implied warranty of merchantability); *Papas v. Upjohn Co.*, 985 F.2d 516, 519-20 (11th Cir. 1993) (breach of implied warranty of merchantability). Thus, Dahlman's breach of implied warranty claims are preempted.

In Count VI, Dahlman claims that the AIM label is "false and misleading" in violation of Minn. Stat. § 325F.67, which prohibits "untrue, deceptive, or misleading" advertising. (Am. Compl. ¶ 27.) This claim represents a direct attack on the EPA-approved AIM label, and it is therefore preempted by the FIFRA. *See Netland*, 284 F.3d at 898; *Nat'l Bank*, 165 F.3d at 608.

Finally, Count VII alleges that FMC committed consumer fraud in violation of Minn. Stat. § 325F.69, by representing that "AIM was appropriate for use on seed corn fields and that plant damage caused by AIM would result in no loss of yield." (Am. Compl. ¶ 28.) The claim is based on two types of statements: those that appear on the AIM label, and those that appear in advertisements for AIM and other "off-label" representations. (*Id.*) To the extent that Dahlman seeks to challenge alleged misrepresentations on the AIM label, its claim is preempted under the Eighth Circuit precedents discussed above. *See Netland*, 284 F.3d at 898; *Nat'l Bank*, 165 F.3d at 608. Those decisions do not, however, address the preemptive effect of the FIFRA on claims based on alleged off-label misrepresentations. This issue has been considered by the Fourth, Fifth, Seventh, Ninth, and Eleventh Circuits. Although there are differences in approach among some of these circuits, all agree that claims based on off-label statements are preempted when the off-label statements and the statements on the pesticide label are essentially the same. *See Andrus*, 178 F.3d at 400; *Kuiper v. Am. Cyanamid Co.*, 131 F.3d 656, 662-63 (7th Cir. 1997); *Taylor*, 54 F.3d at 561; *Lowe*, 47 F.3d at 129-30; *Papas*, 985 F.2d at 519. In the present case, the off-label statements cited by Dahlman in support of its consumer fraud claim convey the idea that the use of AIM will not result in a loss of yield. (Am. Compl. ¶ 28(a)-(f).) Because the AIM label also states that the use of AIM will not result in a loss of yield, the Court concludes that Dahlman's claim is preempted by the FIFRA.

In sum, all of Dahlman's claims for damages are preempted by the FIFRA because they are premised on the inadequacy of the EPA-approved AIM label. Because this conclusion disposes of the entire case, the Court will not address the parties' arguments regarding the Minnesota economic loss doctrine and the limitation of remedies provision on the AIM label.

## IV. CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Defendant FMC's Motion for Summary Judgment [Doc. No. 20] is GRANTED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: November 21, 2002

JOAN ERICKSEN LANCASTER
United States District Judge

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES:

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

C:\FORMS\APPEAL NO. CIV
Rev. August 11, 1995

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information must be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*